```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MINNESOTA
                       Criminal No. 15-164(4)
```

United States of America,

        Plaintiff,

v.                                                          **ORDER**

Sharrod Juanel Rowe,

        Defendant.

        LeeAnn K. Bell, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, counsel for plaintiff.

        Rick L. Petry, Esq. and The Petry Law Firm, 301 Fourth Avenue South, Suite 378N, Minneapolis, MN 55415, counsel for defendant.

This matter is before the court upon the objections by defendant Sharrod Juanel Rowe to the February 11, 2016, report and recommendation of Magistrate Judge Becky R. Thorson (R&R). In her report, the magistrate judge recommends denying Rowe's motions to dismiss the indictment and to suppress evidence, statements, admissions, and answers. Defendant timely objected to certain aspects of the R&R. Based on a de novo review of the file, record, and proceedings herein, the court overrules the objections and adopts the report and recommendation.

**BACKGROUND**

The background of this motion is fully set out in the report and recommendation and the court summarizes only those facts necessary to resolve the current objections.

**I.   Confidential Informant**

On November 25, 2014, a longtime reliable confidential informant (CI) advised the Minneapolis Police Department that co-defendant Houston Oliver was shipping cocaine from Arizona to Minneapolis via two-day priority mail.  The CI stated that Oliver had done so in the past by mailing cocaine packaged in silverware boxes from a particular post office in Maricopa, Arizona.  The CI identified co-defendant James Green and another co-defendant Desmond Williams as Oliver's accomplices.  The police passed the information along to the Minneapolis postal inspector.  The postal inspector then intercepted two priority-mail packages shipped from Arizona to Minneapolis.  The packages were the same approximate weight and size and appeared to be addressed in identical handwriting.  One of the packages originated from the post office identified by the CI.  After a trained canine alerted to the presence of narcotics, the postal inspector obtained a search warrant for the two packages. When the postal inspector opened the packages, he discovered approximately two kilograms of cocaine in each package concealed inside silverware boxes, as foretold by the CI.

The police then contacted Williams, who agreed to an interview. During the interview, Williams corroborated the CI's information about the intercepted packages. Williams admitted to mailing one of the packages, and disclosed that Green had mailed the other one. Williams also disclosed that he and Green were present when Oliver packaged the drugs at an Arizona home, and that Oliver had supplied him with a cell phone to use for drug-related business.

**II. BMW Stop and Search**

Around the same time, the police received further information from the CI that Oliver was going to transport a large quantity of cocaine from Arizona to Minnesota in a gray BMW with Minnesota license plates. The drugs were due to arrive in Minneapolis on the night of November 30. The police determined that Oliver owned a 2002 BMW 745li with Minnesota license plates 672CAZ, and issued an alert for the vehicle.

Shortly before 10:00 p.m. on November 30, State Trooper Megan Thul, who was aware of the alert, spotted Oliver's BMW on I-35W in Minneapolis and pulled the vehicle over. Rowe was the driver and sole occupant of the car. Thul questioned Rowe for about six minutes. When Thul asked about his itinerary, Rowe responded that he had flown from Minnesota to Arizona a few days earlier, picked up the BMW, and driven it back to Minnesota where he planned to return it to Oliver. Rowe said that he planned to call Oliver to

arrange delivery of the BMW. Rowe would not consent to a search of the BMW. According to Thul, Rowe was stuttering and provided inconsistent responses. Thul asked Bloomington Police Officer Christopher Wegner, who had arrived at the scene in a separate squad car, to question Rowe further. He did so for approximately seven minutes.

Approximately 25 minutes after the initial stop, Rowe was removed from the BMW, handcuffed, and placed in the back of Wegner's squad car. The squad car video camera captured Rowe twice muttering to himself: "somebody told on us." At some point during the stop, officers determined that there was probable cause to impound the BMW based on the CI's corroborated statements. Officers conducted a brief search of the BMW's interior and trunk with a narcotics dog, which alerted to the possible presence of narcotics inside a speaker in the trunk. Officers decided to obtain a search warrant, and did not search the speakers at that time. In the interim, the BMW was towed to an impound lot. Officers then took Rowe to the police station where he was questioned and released.

### III. Search Warrant for BMW

On the morning of December 2, officers secured a warrant to search the BMW for narcotics and related items. They found six kilograms of cocaine hidden inside a speaker in the trunk, a

receipt in Green's name for new tires, a cell phone,[1] and documents addressed to Oliver at addresses on Dupont Avenue North and Washington Avenue in Minneapolis.

**IV.    Criminal Case**

Rowe was indicted, along with his Oliver, Green, and Williams, on the charge of conspiracy to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846. ECF No. 114. Rowe filed the instant motions on December 7 and 14, 2015. ECF Nos. 148, 162, and 163. In a thorough and well-reasoned R&R, the magistrate judge recommends denying the motions. See ECF No. 180. Rowe has raised timely objections to the R&R.[2]

## DISCUSSION

The court reviews the R&R de novo. 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b); D. Minn. LR 72.2(b). The court will address only those aspects of the R&R to which Rowe objects.

**I.    Evidence Adduced at Co-defendants' Pretrial Hearing**

Rowe first objects to the R&R's reliance on evidence elicited during his co-defendants' suppression hearing. Specifically, Rowe

---

[1] It is unclear whether the cell phone seized pursuant to the search warrant belonged to Rowe, or whether officers seized his cell phone during the initial traffic stop. Regardless, as noted in the R&R, the phone is not subject to suppression under the Fourth Amendment.

[2] Rowe does not persist in his motion to dismiss the indictment. Accordingly, the court adopts that aspect of the R&R without discussion.

argues that the Magistrate Judge violated his Sixth Amendment right to confront witnesses against him by using the prior testimony of officers Thul and Danielle Evans in reaching her decision.  The court disagrees.  As noted in the R&R, the law is clear that a court may relay on evidence introduced in a co-defendant's related pretrial proceeding without running afoul of the Sixth Amendment if the defendant is given an opportunity to respond to that evidence. See United States v. Blackwell, 49 F.3d 1232, 1236-37 (7th Cir. 1995) (noting that "more than one circuit has condoned reliance on evidence from related trial proceedings of codefendants," provided that the court gives the defendant a reasonable opportunity to respond to the evidence); Logan v. United States, 208 F.3d 541, 544 (6th Cir. 2000) ("A district court is indeed permitted to rely on testimony presented at a related proceeding ...."); see also United States v. Thompson, 533 F.3d 964, 969 (8th Cir. 2008) (explaining that "the district court may rely on hearsay evidence at a suppression hearing" and that "[t]he right of confrontation does not apply to the same extent at pretrial suppression hearings as it does at trial" because the "interests at stake in a suppression hearing are of a lesser magnitude than those in the criminal trial itself") (quotations omitted).

  There is no dispute that Rowe had an opportunity to review the prior testimony before his own hearing and to cross-examine the government's witnesses at that time.  Nor is there any dispute that

the evidence offered at Rowe's hearing was consistent with that offered at his co-defendants' hearings. As a result, the Magistrate Judge did not err in considering evidence from the prior hearing.

## II. Motion to Suppress Evidence and Statements

Rowe also generally challenges the R&R's recommendation that his motions to suppress be denied. Rowe devotes nearly six pages of his brief to this issue, five of which include a general recitation of Fourth Amendment jurisprudence. In the lone paragraph that directly references his objection, Rowe appears to argue that there was no probable cause to arrest him because the CI did not mention him by name when providing information about the BMW. Even though factually correct, there was undeniable probable cause to stop the BMW based on the information provided by the CI, and Rowe's status as the driver of the vehicle provided the officers with a reasonable basis for believing that "he had knowledge of, and exercised dominion and control over" the contents of the BMW. Maryland v. Pringle, 540 U.S. 366, 371 (2003).

Although unclear from his objections, Rowe also seems to argue that his traffic stop by police was unconstitutionally long. The record does not support such a finding here. The stop was reasonable in length under the circumstances and did not violate Rowe's Fourth Amendment rights. United States v. Peralez, 526 F.3d 1115, 1119-20 (8th Cir. 2008). As a result, the court overrules

7

Rowe's objections to the R&R.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1. The R&R [ECF No. 180] is adopted in its entirety;

2. The objections to the R&R [ECF No. 184] are overruled;

3. The motion to dismiss indictment [ECF No. 148] is denied;

4. The amended motion to suppress statements, admissions, and answers [ECF No. 162] is denied; and

4. The amended motion to suppress evidence [ECF No. 163] is denied.

Dated: March 10, 2016

s/David S. Doty
David S. Doty, Judge
United States District Court